Brinkerhoff, J.
This is a hill in chancery filed in Stark county, by the personal representatives of "William Christmas, deceased, against the personal representatives and privies of Thomas Eassitt, deceased, and a former executor of Christmas, to obtain an account and final adjustment of matters of difference between the two estates, and those claiming under them. The dealings between Christmas and Eassitt in their lifetime, and the transactions growing out of those dealings since their death, were numerous and extensive. The case is voluminous, and involves a great many minor questions of detail, with the adjustment of which this court ought not to be burdened, and for the disposal of which the district court, through the medium of a master and otherwise, is fully competent. And we understand, from the counsel for the parties respectively, that the case was reserved here, in the district court, mainly to obtain the decision, by this court, of a single question. To this question, therefore, we will confine ourselves; and we will state the facts of the case so far only as is necessary to understand and determine it.
On the 12th day of May, 1835, Thomas Eassitt, of the city of Philadelphia, and William Christmas, of the county of Stark, Ohio, entered into a contract in writing, reciting that they had purchased of the heirs of John H. Brinton, large tracts of land, situate in the counties of Stark, Columbiana and Carroll, in the State of Ohio, at the price of $4.25 per acre. The whole quantity of land so purchased was estimated ,at 6204 acres, and the entire price to be paid therefor was $26,396.
Said contract further recited, that a conveyance for said lands had, on the same day of the execution of said contract, been made to said Eassitt by the heirs of said Brinton, and that it was agreed between said Eassitt and Christmas, that the former should advance and pay the whole amount of the said consideration money; that the legal title should remain in him, but that said Christmas *560 should proceed to make sale of the lands to the best advantage. Erom the proceeds of the sales, said Eassitt was to be reimbursed for the moneys so advanced by him, with legal interest thereon, and the balance was to be equally divided between them, “ share and share alike.”
It was also agreed, that if the said lands should “ not sell for a sum sufficient to pay first cost and interest, the loss was to be equally borne by the said parties.”
Eassitt'took the legal title to the lands in himself. This was as a security for the advance he had made; but he forthwith, and on the same day, executed to Christmas a power of attorney to sell and convey, in order that the latter might perform his part of the agreement, which imposed upon him the obligation to dispose of the lands.
Christmas then went on and made sales. According to the statement made out by him before his death — a copy of which is made Exhibit No. 4, filed Nov. 10, 1847, with the amended bill — the amount of sales made by him reached $40,499.47, exclusive of interest on the deferred payments. According to the master’s report, there was paid to Christmas during his lifetime, on sales made by him, $13,967.02; and to Griswold, his executor, since his decease, on the same sales, $21,640.93; and there yet remains due on the same contracts the sum of $13,080.79— making, according to the master’s report, a total of $48,-688.74, realized and due upon the contracts made by Christmas in his lifetime.
On the 5th day of September, 1835, Eassitt and Christmas entered into another contract, by which Eassitt sold to Christmas certain lands in Wayne county, Ohio, for the sum of $7,435; and also 100 shares of the Sandy and Beaver Canal stock, of $100 each share, and upon which $15 had then been paid on each share. Eassitt agreed to pay all the subsequent installments, as they became due and were called for by the directors of the Sandy and Beaver Canal Company, until the full amount of $10,000 *561 should be paid, should that sum be required. The contract then proceeds as follows:
“ In consideration of which, the said Christmas agrees to pay the said Fassitt, out of the first money that he may receive for sales of the above lands,” (meaning the said lands then purchased, situate in Wayne county,) “ and out of the first money that he may he entitled to as his share of the profits from the sales of the lands purchased hy said Fassitt and Christmas of Brinton’s heirs, in May, 1835, the above sum of seven thousand four hundred and thirty-five dollars, for the above described tracts of land, and such sum as he may hereafter pay upon the above mentioned canal stock, together with such sum as is already paid by him, and interest at the rate of seven and one-fourth per centum per annum upon such sum as is now paid, or may hereafter be paid upon the canal stock, from the respective dates of the payment of the installments already paid, or which may hereafter be paid. And it is further agreed, that in case the said Christmas should not receive, from the sales of the lands above mentioned, a sum sufficient to pay the amount which may be due the said Fassitt for the purchase of the above property, then the said Christmas agrees to pay the remaining balance that may be due, within seven years from the date of this agreement. The said Fassitt also agrees, that when said Christmas may wish to sell the above mentioned land, to make said Christmas a good and sufficient deed for the same, and also agrees to transfer to said Christmas the said one hundred shares of canal stock, whenever the said Christmas may wish to dispose of it; and, in that event, the said Christmas agrees to pay said Fassitt the money he may receive for sales of said lands or canal stock, or such part thereof as may be the balance remaining due the said Fassitt.”
Fassit died in the spring of 1836, leaving a last will and testament, which was duly admitted to probate. He constituted his wife his residuary devisee and legatee, and all his interest in the Brinton land contract of May 12th, 1835, passed to her, thereunder.
After his decease, his widow, Mary Fassitt, on the 9th day of June, 1836, executed to said Christmas a power of attorney for the sale of the Brinton lands, of the same character with that which had been executed to him by her husband, at the date of the purchase thereof.
Christmas died on the 19th of September, 1836, having made his last will and testament, which was regularly admitted to probate, and a copy of which is made Exhibit No. 1, filed November 10th,1847, with the amended bill. Reason Bell, Hiram Griswold and Isaac Harter were appointed his executors; but Griswold and Harter, only, *562 accepted the trust, Bell declining to act. Letters testamentary were issued to Griswold and Harter on the 15th of October, 1836.
On the 25th of November, 1836, and while said Gris-wold — who chiefly managed the business of the estate of said Christmas — was acting in the capacity of executor, the said Mary Fassitt executed to him a power of attorney, authorizing him to sell and convey the unsold Brinton lands, and execute proper ideeds of conveyance. While acting in the premises, Griswold made sales and collections to a large amount.
In November, 1842, Griswold and Harter resigned their trust as executors of Christmas’s estate, and Arnold Lynch was appointed administrator de bonis non in their stead. This proceeding was instituted by him against the former executors, and Mrs. Fassitt and others, to settle the rights of the estate in the fund arising from the Brinton lands, and also to adjust the other portions of the account with the executors. Since the filing of the hill Mrs. Fassitt has deceased, and her representatives have been made parties. Within a few months past Lynch has also deceased, and Henry B. Curtis has been appointed and qualified as the administrator de bonis non upon the estate of Christmas, and is now acting in that capacity.
That the contract between Christmas and Fassitt in respect to the Brinton lands constituted a partnership between them, is very clear. On the death of Fassitt, the closing up and settlement of the business of that partnership devolved on Christmas, the survivor; and on his death, subsequently, the same duty devolved on Griswold, his executor. Childress v. Emory, 8 Wheat. Rep. 669. And although, after the death of Christmas, Griswold was authorized to act in the double capacity of executor of Christmas and of attorney for the person principally interested in and representing the estate of Fassitt, he must be held to have in fact acted in his rightful character of *563 executor. But, in addition to this, the rights of these estates as ■ against each other and their creditors respectively, were fixed by the death of Christmas; and the receipt, by the representatives of the estate of Eassitt, of moneys which Christmas in his lifetime was entitled to receive, could confer no new rights on Eassitt’s estate as against the estate of Christmas or its creditors. McDonald v. Black, 20 Ohio Rep. 196.
All this is aside from, and but a clearing of the ground for the main question in the case, which is this:
Does the contract between Eassitt and Christmas, of September 5, 1835, operate as an equitable assignment to Eassitt, of any portion of his (Christmas’s) share of the profits of the Brinton lands, either as payment of, or security for, the consideration money provided for under said contract, so as to give to Eassitt, or to his representatives, a specific lien thereon, and, to that extent, a preference over the general creditors of Christmas’s estate ?
The principal and ruling clause of that contract, as bearing upon this point, it will be seen, is this:
“ In consideration of which, the said Christmas agrees to pay the said Eassitt, out of the first money that he may receive for sales of the above lands,” (meaning the said lands then purchased, situate in Wayne county,) “ and out of the first money that he may be entitled to as his share of the profits from the sales of the lands purchased by said Fassitt and Christmas of Brinton’s heirs, in May, 1835, the above sum of seven thousand four hundred and thirty-five dollars,” etc.
The rule on this subject is thus stated in Hare & Wallace’s Notes to Leading Cases in Equity, vol. 2, pt. 2, p. 233: “ It is necessary, moreover, in order to constitute an assignment, either in law or equity, that there should be such an actual or constructive appropriation of the subject-matter assigned, as to confer a complete and present right on the assignee, even when the circumstances do not admit of its immediate exercise. A covenant on the part of the *564 debtor, to apply a particular fund in payment of the debt as soon as he receives it, will not operate as an assignment, for it does not give the covenantee a right to the funds, save through the covenantor, and looks to a future act on his part as the means of rendering it effectual.” This rule seems to he well sustained and settled by the cases cited in its support, and is, it seems to us, decisive of the conclusion, that this contract cannot operate as an equitable assignment, and creates no lien in favor of Eassitt’s estate upon Christmas’s share of the proceeds of the Brinton lands.
There is another matter to which our attention is called. It appears that Griswold, in rendering his final account as executor of Christmas, made a mistake in an item of some $7,000 against himself; and he claims that, in the final decree in this case, the mistake should be corrected. The mistake is evident; and, as counsel for the parties respectively, do not disagree about it, it will readily be corrected by the district court.
Interlocutory decree in accordance with the foregoing opinion, and cause remanded to district court for further proceedings.
Swan, C. J., and Scott, Sutliee and Peck, JJ., concurred.